

NORTHERN DISTRICT OF TEXAS
**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**



**Signed September 18, 2009**                                             **United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| HAROLD MARK DENNIS and | § | Case No. 09-70050 HDH-12 |
| KIMBERLY LANE DENNIS, d/b/a | § | |
| D-BAR H RANCH | § § § | |
| Debtors | § | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### ON DEBTORS' CHAPTER 12 PLAN AND
### STOCKMANS BANK'S MOTION TO DISMISS

On September 16, 2009, this Court conducted a combined evidentiary hearing on the Chapter 12 Plan ("Plan") of Harold Mark Dennis and Kimberly Lane Dennis ("Debtors") and the Motion to Dismiss (the "Motion") filed by Stockmans Bank ("Bank"). Both sides appeared and offered testimony and other evidence.

Prior to the hearing the Debtors announced certain agreements with other objecting parties and the Chapter 12 Trustee announced his support of the Plan. The Chapter 12 Trustee believes that unsecured creditors will receive close to 100% under the Plan after the agreements.

Based on the agreements, the hearing on the Plan and the Motion centered primarily upon whether the Plan is feasible.

Chapter 12 was enacted by Congress in 1986 in an effort to preserve family farms. It is a comprehensive provision requiring the family farmer filing for chapter 12 relief to formulate a realistic plan for restructuring farm indebtedness and to surrender some control and much oversight to a chapter 12 Trustee, who collects payments from the debtor, distributes payments to creditors, and generally monitors the debtor for the life of the plan.

At plan confirmation, the debtor must demonstrate, *inter alia*, that he will be able to make all payments under the plan, and comply with the plan. *See*, 11 U.S. Code § 1225(a)(6). That is the subsection at issue in this case.

At the trial, Mrs. Dennis testified for the Debtors. She offered evidence of the Debtors' past operations and projections for the near and long term. She indicated that the Debtors would receive sharecropping income for cotton and peanuts consistent with the past, and also that the Debtors would begin to receive some income from their sons' calf operations, as the sons realize that such payments to their parents are necessary to keep the family farm. She testified that the Debtors would enter into a hunting lease on their property, jointly with their other family members, and that the combined income from the hunting lease would first go to pay the Debtors' Plan payments. Finally, Mrs. Dennis testified that her father was willing to backstop the first set of payments due the Bank, in February 2010.

Mrs. Dennis was a credible witness. Her testimony regarding the past income from cotton and peanut operations on the farm was supported by tax returns and are indicative of future expected income. Her estimates regarding hunting lease income was consistent on a per acre basis with testimony offered by the Bank's expert witness.

The Bank put on two witnesses, a representative of the Bank and an expert. Both witnesses were straightforward and credible. This Court has some experience with the expert, who is knowledgeable in the area of farm economics. The banker and the expert do not believe the Debtors will be able to repay the bank debt. They are especially concerned with the first payment, due in a few months.

The Bank appears to be over secured. The parties stipulated to a collateral value of slightly more than $604,000. The present payoff plus billed attorneys' fees (covered by the Bank's loan documents) equal about $575,000.

The issue of feasibility, or the Debtors' ability to make the plan payments, is a fence-sitter. For this reason, the Debtors will be given the benefit of the doubt. The Plan will be confirmed and the Motion denied.

The Court reaches this conclusion for several reasons. First, the Plan affects many other parties than the objecting Bank. Confirmation of the Plan and the payments under it will lead to substantial payment to other creditors. Denial of confirmation and dismissal of the case will likely lead to foreclosure by the Bank and the loss of the income-producing farm.

Second, the Debtors appear to be making the efforts suggested by Congress to hold on to their family farm and, at the same time, repay their creditors. That is demonstrated by the joint

efforts of the sons to contribute from calf operations and the agreement by the father to insure that the first payment is made in February to the Bank.

Third, the testimony of Mrs. Dennis was credible and persuasive. The undersigned watched her testify and believes that she (and her husband) will make all efforts possible to make sure the Plan payments are timely made.

The above said, because of the closeness of the feasibility issue, the Bank is entitled to special protections, should the first payment not be made timely. In addition to all the protections offered in open court by Debtors' counsel, the confirmation order will need to provide that the Bank may post the real property for a March foreclosure sale, to occur only if the February 2010 payment is not timely made. If such payment is not made, the stay will lift (as offered by Debtor's counsel) and such lifting of the stay will be *in rem* for a period of 180 days (as requested by the Bank's counsel).

Therefore, the Plan, as modified in open court and by these findings and conclusion, will be confirmed. The parties shall submit a confirmation order within a reasonable time.

###END OF FINDINGS AND CONCLUSIONS###